Shawn T. Welch (U.S.B. # 7113)
A. John Davis (U.S.B. #0825)
Matthew L. Crockett (U.S.B. #9521)
PRUITT GUSHEE
A Professional Corporation
36 South State Street, Ste. 1800
Salt Lake City, Utah
T (801) 531-8446
F (801) 531-8468

Attorneys for Plaintiffs

FILED
U.S. DISTRICT COURT

2005 NOV 14  P 4: 10

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY, UTAH, a Utah political subdivision; KANE COUNTY BOARD OF COMMISSIONERS;  KANE COUNTY WATER CONSERVANCY DISTRICT, a Utah Water Conservancy District; GARFIELD COUNTY, UTAH, a Utah political subdivision; GARFIELD COUNTY BOARD OF COMMISSIONERS,<br><br>      Plaintiffs,<br><br>v.<br><br>GALE NORTON, in her official capacity as Secretary of the Interior;  THE DEPARTMENT OF THE INTERIOR; KATHLEEN CLARKE, in her official capacity as Director of the Bureau of Land Management;  THE BUREAU OF LAND MANAGEMENT;  GENE TERLAND, in his official capacity as the acting Utah State Director of the Bureau of Land Management; DAVID HUNSAKER, in his official capacity as Manager of the Grand Staircase-Escalante National Monument,<br><br>      Defendants. | **COMPLAINT FOR MANDAMUS, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>C<br><br> Judge Ted Stewart<br>J DECK TYPE: Civil<br> DATE STAMP: 11/14/2005 @ 16:08:42<br> CASE NUMBER:  2:05CV00941  TS |

Plaintiffs Kane County, Utah, a Utah political subdivision, Kane County Board of Commissioners ("Kane County"), Kane County Water Conservancy District, a Utah Water Conservancy District ("District"), Garfield County, Utah, a Utah political subdivision, and the Garfield County Board of Commissioners ("Garfield County") (collectively, Kane County, the District, and Garfield County will be referred to as the "Plaintiffs"), by and through counsel, hereby complain of defendants.

## INTRODUCTION

1.      This case concerns defendants' actions in adopting and implementing selected portions of the final Management Plan ("Plan") for the Grand Staircase-Escalante National Monument ("Monument").   The proclamation creating the Monument and applicable federal law require defendants to manage the Monument subject to valid existing rights.  Defendants breached their duties and failed to comply with the law in this regard by adopting and implementing the Plan which fails to recognize and protect Kane and Garfield counties' rights-of-way for county roads and that imposes unauthorized burdens on the Districts rights to water and to divert water from the Monument.

2.      The requirement that Defendants manage the Monument subject to valid existing rights necessarily requires Defendants to first identify those rights and then to adopt and implement a management plan subject to valid existing rights. In preparing the Plan, Defendants identified other valid existing rights on the Monument, such as lands owned by the State of Utah, mineral leases, grazing rights, etc., but Defendants refused to

2

identify any of the counties' rights-of-ways for county roads.  Upon information and belief, Defendants' refusal to recognize any of these rights was for the purpose of evading their duty to manage the Monument subject to valid existing rights.

3.     Defendants refusal to identify and acknowledge (or even consider) these valid existing rights renders the Plan's road closures and restrictions arbitrary, capricious and beyond legal authority.  Defendants' *ultra vires* actions in impairing the counties' rights of way, and in most circumstances, entirely depriving the counties and the public of the use and enjoyment of the rights-of-way, has harmed the counties and the public by denying them the lawful use of these rights-of-way, and will continue to create conflict regarding their use, maintenance and management jurisdiction.

4.     As a specific example of a present harm, Defendants' refusal to acknowledge Kane and Garfield counties' right-of-way for the Hole-In-The-Rock road—one of Utah's most historic, pioneer-era roads—is presently harming Kane County in that federal highway grant funds are being withheld because defendants have refused to acknowledge Kane County's right-of-way.  This road project has been the subject of a full environmental impact statement under the National Environmental Policy Act ("NEPA") 42 U.S.C. § 4321 *et seq.*, but is now being held up by one or more defendants' refusal to acknowledge Kane County's right-of-way.  Upon information and belief, the refusal to recognize Kane County's right-of-way for the Hole-In-The-Rock road is for the purpose of preserving and implementing the Plan free from the burden of valid existing rights.

3

5.    By refusing to identify and acknowledge any Kane or Garfield County rights-of-way, defendants were free to implement a transportation system that is largely inconsistent with historic and current public uses of the rights-of-way in the Monument. Many roads that the Plan ostensibly closed are, in fact, open and regularly used by the public according to their historic uses.

6.    Defendants are now proceeding to deny the counties and the public of the use of these rights-of-way by placing closure and restriction signs on the counties' rights-of-way. Defendants have started to implement unique road numbering in the Monument and to restrict and prevent the counties' use and management of these rights-of-way. The counties use, and are in the process of implementing, common numbering for county roads that cross county lines between Kane and Garfield counties. Many of these county roads cross vast stretches of public lands in the counties, and enter and exit public lands within the Monument. The counties' common numbering system for county roads is authorized by law and serves the public interest in directing public travel, facilitating use restrictions, and assisting search and rescue. Defendants' placement of unique signs and unilateral restrictions and closures constitute unlawful interference with the counties' possession, use, and management of their valid existing rights.

7.    By refusing to identify the valid existing water rights on the Monument, Defendants have failed to protect the District's rights to water and have impaired the District's ability to divert water from the Monument. Though conceding that the Monument did not reserve water as a matter of federal law, with one limited exception the

Plan purports to generally prohibit diversion of water from the Monument and imposes additional burdens upon persons who seek to divert their water off the Monument. The Plan's requirements in this regard have no legal basis and are therefore arbitrary, capricious and beyond right.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1331 [federal question], 28 U.S.C. § 2201 [Declaratory Judgment Act], 28 U.S.C. § 1361 [mandamus], and 5 U.S.C §§ 701-706. The claims asserted herein arise under the Due Process Clause of the Fifth Amendment to the United States Constitution, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, the Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, (repealed) (hereinafter referred to as "R.S. 2477"), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.* The requested injunctive relief is provided for in Fed. R. Civ. P 65.

9.     Venue is proper under 28 U.S.C. § 1391(e), as a substantial part of the events giving rise to these claims and the Monument lands are located within the State of Utah.

## PARTIES

10.     Plaintiff Kane County, Utah, is a Utah political subdivision. Plaintiff Kane County Board of Commissioners exercises governmental authority for and on behalf of Kane County. As a political subdivision of the State of Utah, Kane County, acting through its board of commissioners, is duly vested with governmental power and authority in furtherance of the public health, safety and welfare of its citizens and those who travel

county roads within its boundaries. Kane County is located in southern Utah and most of the Monument lands that are the subject of this case lie within the boundaries of Kane County. Kane County, on behalf of the public, owns, uses, exercises jurisdiction, manages and maintains rights-of-way for county "B" and "D" roads within its borders, many of which cross public lands including public lands within the Monument.

11.     Plaintiff Kane County Water Conservancy District, is a Utah Water Conservancy District. As a Utah Water Conservancy District, the District is vested with powers and authority under state law, including the Water Conservancy Act set forth in Utah Code Ann., § 17A-2-1401 *et seq*. The District's area includes lands within Kane County, Utah. The District owns water rights and rights to water with points of diversion located on lands within the boundaries of the Monument. The District has authority to divert, construct diversion facilities and otherwise manage the use of its water within its area.

12.     Plaintiff Garfield County, Utah, is a Utah political subdivision. Plaintiff Garfield County Board of Commissioners exercises governmental authority for and on behalf of Garfield County. As a political subdivision of the State of Utah, Garfield County, acting through its board of commissioners, is duly vested with governmental power and authority in furtherance of the public health, safety and welfare of its citizens and those who travel county roads within its boundaries. Garfield County is located in southern Utah and a substantial portion of the Monument lands that are the subject of this case lie within the boundaries of Garfield County. Garfield County, on behalf of the

public, owns, uses, exercises jurisdiction, manages and maintains rights-of-way for county "B" and "D" roads within its borders, many of which cross public lands including public lands within the Monument.

13.    Defendant Gale Norton (the "Secretary") is the Secretary of the United States Department of the Interior and is sued in her official capacity.   Secretary Norton succeeded Bruce Babbitt, who served as Secretary of the Interior from 1993 until January 20, 2001.   In her official capacity, the Secretary is responsible for upholding the Constitution of the United States and for directing management of public lands and the Monument in accordance with the provisions and requirements of federal law.   In her capacity as Secretary of the Department of Interior, the Secretary has sworn to uphold the Constitution and the laws of the United States.

14.    Defendant Department of Interior ("DOI") is the department of the federal government to which Congress delegated the authority to administer the public lands and the Monument in accordance with the Constitution of the United States and federal law.

15.    Defendant Kathleen Clarke is the Director of the Bureau of Land Management and is sued in her official capacity.  In her official capacity, Director Clarke is responsible for managing the public lands in accordance with the Constitution and federal law.  In her capacity as Director of the Bureau of Land Management, Director Clarke has sworn to uphold the Constitution and the laws of the United States.

16.    Defendant Bureau of Land Management ("BLM") is an agency within DOI which has been delegated authority by Congress to administer public lands pursuant to

federal law, including FLPMA.  BLM is responsible for managing the federal lands and federal interests in lands within the Monument pursuant to federal law, including FLPMA.

17.   Defendant Gene Terland is the acting Utah State Director of the BLM and is sued in his official capacity.   Acting Director Terland succeeded Sally Wisely, who formerly served as Utah State Director of the BLM from May of 1999 until August of 2005.   In his official capacity, the acting Director is responsible for upholding the Constitution of the United States and for directing management of Utah's public lands and the Monument in accordance with the provisions and requirements of federal law, including FLPMA.

18.   Defendant David Hunsaker is the Manager of the Grand Staircase-Eslcalante National Monument and is sued in his official capacity.  In his official capacity, Manager Hunsaker is responsible for upholding the Constitution of the United States and for directing management of the Monument in accordance with the provisions and requirements of federal law, including FLPMA.   The foregoing defendants may be referred to as "Defendants."

## KANE AND GARFIELD COUNTY R.S. 2477 RIGHTS-OF-WAY

19.   From 1866 until October 21, 1976, R.S. 2477 operated as a grant of "the right of way for the construction of highways over public lands, not reserved for public uses." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by FLPMA, Pub.L. No. 94-579 § 706(a), 90 Stat. 2743.

20.    Although FLPMA repealed R.S. 2477 in 1976, Congress expressly preserved all prior existing rights-of-way granted under R.S. 2477.  "Nothing in this subchapter shall have the effect of terminating any right-of-way or right of use heretofore issued, granted or permitted." 43 U.S.C. § 1769(a).

21.    Acceptance and perfection of R.S. 2477 rights-of-way "required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested." S. Utah Wilderness Alliance v. BLM, 425 F.3d 735, ___ (10th Cir. 2005).

22.    Acceptance and perfection of R.S. 2477 rights-of-way occurred through the establishment of public highways crossing public lands in accordance with state law.  In Utah, a highway is "dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72-5-104(1) (2005)).

23.    Kane and Garfield counties own interests in, and have legal authority regarding, class "B" and "D" public highways and the R.S. 2477 rights-of-way for such roads that lie within their respective borders. See Utah Code Ann. §§ 72-3-103-105, 72-5-103–105, and 72-5-302.

24.    Kane and Garfield counties own, on behalf of the public, numerous R.S. 2477 rights-of-way crossing public lands within the counties and also within the Monument. These rights-of-way were duly perfected as valid existing rights that continue to serve the

valuable interests of the public in traveling from place to place across public lands within Kane and Garfield counties.

25.     Maps, aerial photography, and historical documents confirm the validity and location of these Kane and Garfield County rights-of-way.  Many of these rights-of-way are depicted on the counties' "B" and "D" road maps.  As Kane and Garfield County "B" and "D" roads, Kane and Garfield counties are authorized to use, regulate, and maintain the roads within the scope of these rights-of-way.  The counties' right and authority to use, regulate and maintain these roads includes that which is reasonable and necessary for the purposes for which the rights-of-way were granted.

26.     R.S. 2477 rights-of-way are considered a species of easement crossing federal lands that include a right to use federal land in a certain way.  The Rights-of-Way Across Federal Lands Act, Utah Code Ann. § 72-5-303, requires Kane and Garfield counties to use and manage these rights-of-way cooperatively with the federal land manager.  "The holder of an R.S. 2477 right-of-way and the owner of the servient estate shall exercise their rights without unreasonably interfering with one another." Id. at § 72-5-303(2).

27.     State law vests Kane and Garfield counties with jurisdiction of county "B" and "D" roads within their respective borders.  Utah Code Ann., §§ 72-3-103(4) and 72-3-105(4).  This jurisdiction includes authority to enact ordinances and make regulations, not in conflict with other law, for the use of all public roads and highways in the county outside of cities and towns.  Utah Code Ann., § 17-50-309.

28.    Kane and Garfield counties are authorized to regulate, warn and direct traffic on their "B" and "D" roads by means of signs and authorized traffic control devices. Utah Code Ann., §§ 41-6a-208 and 41-6a-102. The objective for Kane and Garfield counties' actions in signing, regulating and maintaining its "B" and "D" roads is to promote public convenience and safety. *See* Utah Code Ann., § 72-5-306(4).

29.    Because many Kane and Garfield County roads cross a common border, the counties use and intend to implement a common numbering system using a prefix "K" in Kane County and "G" in Garfield County, and thereafter the same identifying number in both counties. This system furthers the counties' interests of public convenience and safety, and will facilitate implementation of off-highway vehicle ("OHV") ordinances through designations of roads that are open or closed to OHV use. This road numbering applies across both counties, including county roads that enter and exit the Monument.

30.    Kane County has placed road numbering signs on some of its roads, including within the Monument. Garfield County has similar signs for its roads. With reference to the discussion of signing below, the counties are not presently placing signs on county roads within the Monument.

## KANE WATER CONSERVANCY DISTRICT'S WATER RIGHTS

31.    Kane Water Conservancy District owns various water rights and rights to water within Kane County, Utah. The District serves the public benefit and need of Kane County citizens within its service area by facilitating the efficient and stable provision of water to meet their current and future needs.

32.     The District owns water and rights to water, some of which have points of diversion within the boundaries of the Monument.  The District's rights in and to such water is governed by State law.

33.     FLPMA governs the terms and conditions for obtaining rights-of-way and installing diversions and facilities that may be needed to divert the District's water across public lands, including lands within the Monument.

## FEDERAL LAND POLICY AND MANAGEMENT ACT

34.     The federal lands and interests in land within the Monument are managed by the BLM in accordance with FLPMA.

35.     FLPMA, Section 701(h) provides: "All actions by the Secretary concerned under this Act shall be subject to valid existing rights." 43 U.S.C. § 1701, note.

36.     In adopting FLPMA in 1976, Congress expressly preserved all prior existing rights-of-way granted under R.S. 2477.  "Nothing in this subchapter shall have the effect of terminating any right-of-way or right of use heretofore issued, granted or permitted." 43 U.S.C. § 1769(a).

37.     BLM regulations in effect at all times relevant herein prohibit any diminishment of the rights-of-way granted by R.S. 2477.  43 C.F.R. § 2801.4 (2005).

38.     FLPMA requires that "[l]and use plans of the Secretary under this section shall be consistent with State and local plans to the maximum extent he finds consistent with Federal law and the purposes of this Act."  43 U.S.C. §1712(c)(9); 43 U.S.C. §1701(a)(2).

39.    FLPMA requires the Secretary to develop land use plans observing the principles of multiple use and sustained yield. 43 U.S.C. § 1712(b).

40.    FLPMA requires the Secretary to develop land use plans considering present uses of the lands and with the coordination of local government.  43 U.S.C. § 1712(b)-(c).

## GRAND STAIRCASE-ESCALANTE NATIONAL MONUMENT PROCLAMATION

41.    By Presidential Proclamation 6920 dated September 18, 1996 ("Proclamation"), under the authority granted in Section 2 of the Act of June 8, 1904, 36 Stat. 225, 16 U.S.C. § 431 ("Antiquities Act"), President William J. Clinton set apart roughly 1.7 million acres of federal land and interests in land in Kane and Garfield counties as the Grand Staircase-Escalante National Monument.

42.    The boundaries of the Monument were later adjusted to include more than 1.8 million acres of federal land and interests in land within Kane and Garfield counties.

43.    The Proclamation established the Monument subject to valid existing rights.

44.    The Proclamation expressly did not reserve any water as a matter of federal law.

45.    The Proclamation directs the Secretary to prepare a management plan for the Monument and, through the BLM, to manage the Monument pursuant to applicable legal authority.

46.    The Proclamation further directs the Secretary to address in the management plan the extent to which further action may be necessary pursuant to federal or State law to assure the availability of water for the Monument.

## GRAND STAIRCASE-ESCALANTE NATIONAL MONUMENT MANAGEMENT PLAN

47.   On November 15, 1999, Secretary Bruce Babbitt signed the Record of Decision adopting and implementing the final Grand Staircase-Escalante National Monument Management Plan, to be effective in February of 2000.

48.   The Proclamation and federal law require management of the Monument to be subject to valid existing rights.

49.   The Record of Decision states the following:

> [D]iscussion of R.S. 2477 assertions in footnote 1 of Chapter 2 of the Approved Plan has also been clarified to emphasize that **nothing in the Plan extinguishes any valid existing rights-of-way in Grand Staircase-Escalante National Monument**. Nothing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has to assert and protect R.S. 2477 rights, and to challenge in Federal court, or any other appropriate venue, any BLM road closures that they believe are inconsistent with their rights.
> ROD, p. ix (emphasis added).

50.   In the section titled Transportation and Access, the Plan states the following regarding Kane and Garfield County roads in the Monument:

> TRAN-1      This Plan designates the route system for the Monument. The transportation map (Map 2, in the back of the document) shows routes that will be open for public use and those available for administrative use only. **Any route not shown on Map 2 is considered closed upon approval of this Plan, subject to valid existing rights.** fn. 1
>
> > [Footnote 1]  Some government entities may have a valid existing right to an access route under Revised Statutes (R.S.) 2477, Act of June 26, 1866, ch. 262, § 8, 14 Stat. 251 [codified as amended at 43 U.S.C. § 932 until repealed in 1976 by the Federal Land Policy and Management Act of

1976 (FLPMA) . . . [C]laims of rights-of-ways under R.S. 2477 are contentious and complicated issues, which have resulted in extensive litigation. *See e.g.* Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir. 1988); Southern Utah Wilderness Alliance v. Bureau of Land Management, Consolidated Case No. 2:96-CV-836-S (D. Utah, filed Oct. 3, 1996, pending). [See note below.] **It is unknown whether any R.S. 2477 claims would be asserted in the Monument which are inconsistent with the transportation decisions made in the Approved Plan or whether any of those R.S. 2477 claims would be determined to be valid.** To the extent inconsistent claims are made, the validity of those claims would have to be determined. If claims are determined to be valid R.S. 2477 highways, the Approved Plan will respect those as valid existing rights. **Otherwise, the transportation system described in the Approved Plan will be the one administered in the Monument. Nothing in this Plan extinguishes any valid existing right-of-way in the Grand Staircase-Escalante National Monument.** Nothing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has to assert and protect R.S. 2477 rights, and to challenge in Federal court of other appropriate venue, any BLM road closures that they believe are inconsistent with their rights. Plan, p. 46 (emphasis added).

[Note: The referenced Case No. 2:96-CV-836 later resulted in a decision reported at 147 F. Supp. 2d 1130 (D. Utah 2001), which was reversed and remanded as reported at 425 F.3d 735 (10th Cir. 2005).]

51.    The Transportation and Access section of the Plan purports to establish numerous restrictions on the use and management of the roads designated as open on the above referenced Map 2, and to solely authorize BLM to maintain and exercise jurisdiction of these roads.

52.   The Transportation and Access section of the Plan purports to close all roads in the Monument not shown on the above referenced Map 2, and to deny Kane and Garfield County and the public the use of the rights-of-way for those roads.

53.   Even though the Plan facially acknowledges that BLM actions are subject to valid existing rights, and that the BLM has not attempted to identify those rights, the Plan provides for BLM reclamation (obliteration) of the roads and rights-of-way closed in the Monument, stating:

Road Restoration Strategy

TRAN-17   The BLM's strategy for restoring routes that will no longer be available for public or administrative motorized use in the Monument will be phased over a period of years. This will be accomplished as rapidly as funding permits. It is anticipated that this could take as many as ten years. Each year, a percentage of the Monument's base budget will be used to restore routes in areas that are easily accessible to the public and that involve sensitive resources in immediate danger of being degraded. Generally, routes in the Frontcountry and Passage Zones will be closed first. However, there may be routes in the Outback and Primitive Zones that will be considered on a case-by-case basis.

The proposal for restoration will include:
- not repairing washed out routes
- natural barriers, such as large boulders
- dead and down wood to obscure route entry ways fences
- ripping up the route bed and reseeding with vegetation natural to that area
- replacing gates with a fence if area has a fence in place
- visitor education and information

Plan, p. 48.

54.   The Record of Decision states the following regarding water development:

•     Water Developments:   As in the Proposed Plan, new water developments are restricted in the Approved Plan to the following purposes:  for better distribution of livestock when deemed to have an overall beneficial effect on Monument resources or to restore or manage native species or populations.  The Proposed Plan also stated that such developments could be done "only when there is no other means to achieve the above objectives."  For clarification purposes, this wording has been modified in the Approved Plan to state that developments could be done when "a NEPA analysis determines this tool to be the best means of achieving the above objectives."
ROD, p. ix.

55.    Although ostensibly recognizing that others own water rights located within the

Monument, the Plan states the following:

LAND-4     In general, proposals for diverting water out of the Monument will not be permitted.  Exceptions could be made as discussed previously in WAT-2 of the Water section in this chapter.
Plan, p. 49.

56.    The Plan further states that diversions of water from the Monument would be

subject to an additional burden:  "Water may not be diverted out of the Monument except

as described in WAT-2 for the town of Henrieville or for other local communities **if the**

**applicant demonstrates no effect on Monument resources.**" (emphasis added).  Plan, p.

85.  This additional burden is not authorized under any existing law.

## THE PLAN AND ITS IMPLEMENTATION IMPAIR VALID EXISTING RIGHTS AND CONFLICT WITH APPLICABLE LAW

57.    Plaintiffs commented, protested and otherwise informed the pertinent DOI and

BLM personnel of the legitimate concerns with the proposed agency action during

promulgation of the final Plan.  Plaintiffs attempted meaningful participation in the

development of the Plan, but their efforts were rebuffed.

58.    Plaintiffs comments and protests were ignored and the final Plan was adopted by final secretarial action without resolving the legality of the above-referenced sections of the Plan.

59.    Defendants are now implementing the Plan and impairing or revoking valid existing rights to Plaintiffs' and the public's detriment.

60.    Despite the Plan's ostensible reference to authority in other federal law or the Proclamation, FLPMA governs the Defendants actions in adopting and implementing the Plan.

61.    FLPMA requires land use plans to be subject to valid existing rights.  FLPMA, and its regulations, prohibit the Plan from diminishing the counties' rights-of-way. FLPMA further requires Defendants, wherever possible, to protect current public uses and to conform to local government plans to the maximum extent possible.

62.    FLPMA requires Defendants to manage the lands within the Monument under the statutory direction of multiple use and sustained yield.   The Plan, however, implements an unlawfully restricted management objective of exclusion and restriction.

63.    The Plan fails to comply with the law in that it is not subject to valid existing rights, it restricts the use of, and terminates, valid existing rights, it extensively and unnecessarily curtails historic and current public uses, and utterly fails to address Plaintiffs' local plans and ignores principles of multiple use.

64.    Through the Plan, Defendants unilaterally created a transportation system that purports to assert sole possession of Kane and Garfield counties' prior-existing rights-of-

way, to regulate and restrict their use, and to otherwise close all other county rights-of-way within the boundaries of the Monument. The Plan further determines to rip up and destroy any right-of-way that is not specifically left open under the Plan.

65.     The Plan fails to identify even a single county right-of-way within the entire 1.8 million acre Monument. The arbitrary and capricious nature of Defendants action in refusing to identify any valid existing right-of-way appears within the Proclamation itself: "Mormon pioneers . . . built and traversed the renowned Hole-in-the-Rock Trail as part of their epic colonization efforts. Sixty miles of the Trail lie within the monument . . .."

66.     The Hole-In-The-Rock road traverses a Kane and Garfield County right-of-way.

67.     Through the Plan and its implementation, Defendants have denied and impaired Kane and Garfield counties' ability to manage their rights-of-way and the county roads that traverse these rights-of-way in accordance with applicable law. Federal law requires Defendants to act subject to valid existing rights.

68.     Through the Plan and its implementation, Defendants have denied Kane and Garfield counties, and the public, the use and enjoyment of the counties' rights-of-way within the Monument, including according to historic and current public uses. Federal law requires Defendants to act subject to valid existing rights and to adopt land use plans that consider local plans and current public uses.

69.     Through the Plan and its implementation, Defendants are closing and restricting use and management of Kane and Garfield County rights-of-way, without first verifying that their actions are in accordance with valid existing rights. Federal law requires

Defendants to act subject to valid existing rights. The Due Process Clause of the Fifth Amendment to the United States Constitution affords the counties substantive and procedural rights before they can be deprived of their interests in the use and management of their rights-of-way. Defendants failed to afford Kane and Garfield counties due process.

70. Through the Plan, Defendants purport to trap the District's water rights and points of diversion within the Monument, and to impose unauthorized burdens upon the District to seek diversion of these water rights from the Monument. Federal law requires Defendants to act subject to valid existing rights and the additional burdens placed upon the District's ability to divert its water from the Monument are beyond any right or authority.

## FIRST CAUSE OF ACTION
### (ULTRA VIRES AND UNLAWFUL ACTIONS)

71. Plaintiffs incorporate herein and reallege each of the foregoing paragraphs 1 through 70.

72. Judicial review of Defendants' actions is available under the doctrine of non-statutory judicial review, because Defendants have acted without statutory authority and *ultra vires*. The APA also authorizes judicial review of Defendants' actions because Defendants have acted contrary to law and without lawful authority, 5 U.S.C. §706(2)(B) - (D), arbitrarily, capriciously, and not in accordance with law. 5 U.S.C. §706(2)(A). This

Court is empowered to render declaratory relief establishing the parties' respective rights and interests.  28 U.S.C. § 2201.

73.    The Record of Decision, Plan and its actual implementation on the ground constitute final agency action.  5 U.S.C. § 704.

74.    Plaintiffs are persons suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute (including R.S. 2477 and FLPMA) and the United States Constitution.  Plaintiffs are additionally suffering injury due to *ultra vires* actions.

75.    Plaintiffs' rights and interests set forth above are legally protected interests under the Due Process Clause of the Fifth Amendment to the United States Constitution. *See* Watson v. University of Utah Medical Ctr., 75 F.3d 569, 577 (10th Cir. 1996);  First Unitarian Church of Salt Lake City v. Salt Lake City Corp., 308 F.3d 1114, 1122-223 (10th Cir. 2002).

76.    Secretary Norton, Director Clarke, Acting Director Terland, and Manager Hunsaker (the "Individual Defendants") are governmental officials whose actions, in their respective official capacities, must at all times comply with the United States Constitution.

77.    The Individual Defendants' have no right under federal or state law to summarily deprive Kane and Garfield County of the continuing use, possession, jurisdiction and maintenance of the rights-of-way granted by Congress, nor to interfere with Kane and Garfield counties' lawful management of their "B" and "D" roads crossing these rights-of-way.

78.    Kane and Garfield counties' interests in the continuing use, management and possession of their county "B" and "D" roads and rights-of-way for these roads constitute valid existing rights that cannot be denied absent due process of law, even if Defendants were to dispute the interests. *See* Dunbar Corp. v. Lindsey, 905 F.2d 754, 759-60 (4th Cir. 1990); *see also* Kansas v. United States, 249 F.3d 1213, 1224-25 (10th Cir. 2001).

79.    One or more of the Individual Defendants' are acting beyond any legal right and authority in summarily depriving Kane and Garfield counties' interests in the continuing use, possession, maintenance and management of their rights-of-way.

80.    Defendants' actions have impaired Kane and Garfield counties' ability to use, possess, manage and maintain their rights-of-way, and are otherwise harming Kane and Garfield County and the public's interests in the continuing use and possession of these rights-of-way.

81.    The District's water rights and right to divert such water from the lands within the Monument have been unlawfully burdened under the Plan, including the LAND-4 and Water sections of the Plan.

82.    Plaintiffs are entitled to declaratory relief.

## SECOND CAUSE OF ACTION
## (INJUNCTIVE RELIEF)

83.    Plaintiffs incorporate herein and reallege each of the foregoing paragraphs 1 through 82.

84. The defects in the Transportation and Access, LAND-4, and Water sections of the Plan deprive it of any legitimate authority or effect. Despite the numerous defects, Defendants are currently enforcing these sections of the Plan.

85. Enforcement of these sections of the Plan is harming Plaintiffs through the loss of valid existing rights, conflicts in jurisdiction and management rights, and the placing of unlawful burdens upon their interests.

86. Plaintiffs are entitled to an order of this Court enjoining enforcement of the above referenced Transportation and Access, including Map 2, LAND-4, and Water sections of the Plan.

## THIRD CAUSE OF ACTION
### (MANDAMUS)

87. Plaintiffs incorporate herein and reallege each of the foregoing paragraphs 1 through 86.

88. This Court is authorized to issue orders in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to a plaintiff. 28 U.S.C. § 1361.

89. Plaintiffs are entitled to an order in the nature of mandamus directing each of the Individual Defendants to first determine Plaintiffs' valid existing rights before asserting or taking any action in enforcement or implementation of the referenced Transportation and Access, including Map 2, LAND-4, or Water sections of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief and judgment against Defendants as follows:

1.        Declare that the Transportation and Access section of the Plan, including Map 2, and the Plan's additional burdens on the District's right to divert and use its water, including provision LAND-4, and WAT-2, are arbitrary and capricious, *ultra vires*, and contrary to law.

2.        Declare Defendants' action in adopting the Transportation and Access section of the Plan, including Map 2, to be arbitrary, capricious and beyond constitutional or legal authority in that it purports to summarily deny Kane and Garfield counties their jurisdiction and authority in managing county "B" and "D" roads without due process of law or any consideration of whether Defendants' actions deprived Kane and Garfield counties of valid existing rights.

3.        Enjoin Defendants from asserting, enforcing, carrying out, or implementing the Transportation and Access section of the Plan, including Map 2, and the LAND-4, WAT-2, and unauthorized water diversion provisions of the Plan, as being arbitrary and capricious, *ultra vires*, and contrary to law.

4.        Enjoin Defendants from implementing any road management decisions within the Monument, including use restrictions, closures and reclamation, unless and until Defendants determine that such actions are lawfully subject to valid existing rights.

5.        Enter an order in the nature of mandamus directing that Defendants not close or restrict use of roads within Monument, or otherwise assert management authority of

any right-of-way or existing road without first verifying that such action will not destroy or impair a Kane or Garfield County right-of-way or interest in a county "B" or "D" road.

6.  Order Defendants to pay Plaintiffs costs and fees incurred herein as allowed by law.

7.  Any and other relief which the Court deems just and proper in the circumstances.

Dated this 17th day of November, 2005.

PRUITT GUSHEE

Shawn T. Welch
A. John Davis
Matthew L. Crockett

2284.04/pleadings/Complaint.doc

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

- KANE COUNTY, UTAH
- KANE COUNTY BOARD OF COMMISSIONERS
- KANE COUNTY WATER CONSERVANCY DISTRICT
- GARFIELD COUNTY, UTAH,
- GARFIELD COUNTY BOARD OF COMMISSIONERS,

## DEFENDANTS

FILED
U.S. DISTRICT COURT

- GALE NORTON, in her official capacity as Secretary of the Interior
- THE DEPARTMENT OF THE INTERIOR
- KATHLEEN CLARKE, in her official capacity as Director of the Bureau of Land Management
- THE BUREAU OF LAND MANAGEMENT
- GENE TERLAND, in his official capacity as the acting Utah State Director of the Bureau of Land Management
- DAVID HUNSAKER, in his official capacity as Manager of the Grand Staircase-Escalante National Monument,

2005 NOV 14 P 4:10

THE

DEPUTY CLERK

(c) Attorney's (Firm Name, Address, and Telephone Number)
Shawn T. Welch (U.S.B. # 7113)   PRUITT GUSHEE
A. John Davis (U.S.B. #0825)   36 South State Street, Ste. 1800
Matthew L. Crockett (U.S.B. #9521)   Salt Lake City, Utah  Tel. (801) 531-8446

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Due Process Clause, V. Am. U.S. Constitution, 43 U.S.C. 1701, 5 U.S.C. 702

Brief description of cause:
Ultra Vires and Agency Action Review

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  11-14-05

SIGNATURE OF ATTORNEY OF RECORD  Shawn W.

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

Judge Ted Stewart
DECK TYPE: Civil
DATE STAMP: 11/14/2005 @ 16:08:42
CASE NUMBER: 2:05CV00941  TS